Afternoon, your honors. Curtis Over for the appellant Susie Abram. This matter, the issues are facts are straightforward and our briefs have been candid, straightforward, but just briefly, just just briefly, Susie Abram had been doing an excellent job for about 20 years, no problems except for her employee, and her problems began with Hadson and Fraser when they just generally began to hassle her. And ultimately, for no reason at all, she continued to complain, why are you singling me out? And they continued to ignore her, did nothing, and her declaration, which has 39 paragraphs, relatively straightforward to indicate actually what actually happened to her during that period of time, even though she had been performing excellently for more than 19 or 20 years. And then in April of development plan, impossible, for no reason at all, and then a few months later they charged her with inattention to duty, dishonesty, and inability to manage the cluster, let's say the cluster of her patients, and proceeded to discipline her and ultimately did recommend starts of discipline for her. There were meetings in connection with her grievance and she became so distraught with that she took off and was gone for about almost a year to 11 months. And when she came back, they immediately began the same process, but the basis of our position is that there was never any basis for any development plan, defendants, the appellees never presented any facts, there are no facts to support any of the charges, none whatever. And she continued to insist on their producing a basis for the actions against her. And as I've indicated, she became so emotionally distraught, she just couldn't take it. But when she did come back, they renewed it, and they continued it. And ultimately, she was just forced to leave or have an emotional breakdown. What's the best evidence in the record in your estimation that this was a discriminatory action as opposed to simply a disagreement and perhaps unfair treatment of an employee? Because, as she has indicated, she complained that her fellow white co-workers were not treated in the same manner. We've outlined, and unfortunately because of my visual challenge, I can't go through her declaration and outline those, but they're pretty straightforward and can be seen very easily. They included suggesting that, particularly as to the charge of dishonesty, they accused her of stealing their own money. As to the, she didn't get training, I think, as we've mentioned, relative to being trained on the computer, as was given others. Counsel, could I ask you a question? Am I wrong? Did you not, in the record, concede that they didn't treat other African-Americans in this manner, that they were not unfairly treated, and that she was particularly pulled out as the only one that was being unfairly treated? Well, I'm not sure I understood everything you said, Your Honor, but I understand we have indicated in her declaration that, relative to the complaints that she has set out and gave a factual basis for, she was treated differently. I think there was only one other African-American activity therapist there who had her own problems, as far as that goes, and continues to do for that matter, but the focus was on her, particularly as she continued to complain, because she couldn't understand why, since she had been performing all these years in an exemplary fashion, all of a sudden, she wasn't performing her work, even though she wasn't doing anything differently, and no one else had any complaints about her work. Is there any evidence in the record that either Hanson or Frasier uttered any racial slurs or talks about African-Americans? I don't think so. That doesn't happen anymore these days. People are a little more sophisticated. Is there? Well, the answer is no. The answer, then, is no. No, I don't think so, Your Honor. All right. And is there any evidence in the record that Mr. Hanson or Mr. Frasier rolled up other employees for these kinds of actions that they took against Hanson? No. So, as far as how we could relate this to other employees, we have no evidence as to what other employees were written up or weren't written up, do we? Well, I think we've indicated she had knowledge of the things that were going on with her. They were not subjected to the same types of overt actions and conduct that she was subjected to. She was there. She was working with them. She knew what was going on. And as a matter of fact, Mr. Frasier indicated and conceded that she repeatedly continued to complain about unfair treatment, but never indicated that he did anything about it. And as we've indicated in her declaration, where she challenged all the charges and set out specific facts to show that there were no basis whatever for these charges, particularly the ridiculous suggestion that she stole money from herself. She had raised money, and they said she didn't properly account for it. She used one out of her own pocket. Now, in this situation, obviously, showing discriminatory actions becomes difficult because people can suggest other motives for their action. But we think that under the circumstances and based on the facts used in her declaration, we show that she was treated differently. And the only rational conclusion is that the way she was, they were of a different race than she was. None of the other therapists were treated the way that she was. And this matter went on for several years until she was forced out. We do think that you have to look at the entire picture, which goes back to her entire record, which shows that her performance has been exemplary. And there's nothing in the record to show that that performance had changed at all. And so it's under these circumstances that particularly as to the issue related to retaliation, and they continue to do it, the more she complained, the more they accelerated their actions against her. We think that the burden fell upon the defendants here to show that there was a basis for their action, that there were no tribal issues left in this case. And we think the declarations clearly indicate as much. The district court, as far as retaliation claims concerned, indicated that there was no evidence that she had engaged in a protective activity, notwithstanding the fact that the defendant himself, Fraser, conceded that she had. So we feel that as to the other issues, we think that we've dealt with those, and I'll brief. Do you want to reserve some time for rebuttal? I'm sorry, Your Honor. Do you want to reserve some time for rebuttal? Yes, please. All right. Thank you, counsel. We'll hear from San Francisco. Good afternoon, Your Honor, Your Honors. I'm Jonathan Rolnick. I'm a deputy city attorney, and I'm here on behalf of the city and its defendant, William Fraser. Could you move the microphone just a little closer? Certainly. I'll try to do the same. Sure. I think there's nothing novel about this case. I think what the case law in this case clearly demonstrates is that it's not sufficient to prove a prima facie case, let alone overcome the articulated nondiscriminatory reasons offered by an employer for their actions by simply demonstrating that one is a member of a protected class and that one has suffered some adverse employment action. A plaintiff must demonstrate some facts to raise an inference that what motivated the adverse action was the person's protected status, in this case race, as we have a claim under Section 1981. And I think some of the questions the Court has already asked are clear in the record. You asked Mr. Oler what the best evidence was of the discrimination, and he noted that Ms. Abram asserts that white coworkers were treated differently than she was. And that statement summarizes the totality of the, for lack of a better word, evidence on that issue. It is purely Ms. Abram's conclusory statement to that effect in her declaration. She's presented no evidence of coworkers and whether or not they engaged in the same or similar kinds of transgressions and were or were not subjected to similar types of discipline or not. And in fact, she conceded in her deposition that she really had no personal knowledge about whether or not her coworkers had been treated in the same fashion as she had for the same transgressions. Counsel, could she have a retaliation claim without showing that other workers were differently treated than she was? Well, I think she can have a retaliation claim if she engages in the protected activity and then shows that because of her protected activity, she's subjected to an adverse action. But again, here the adverse actions that we're talking about are these two disciplinary matters that arose in September of 2003 and October of 2003. I may have the months off by a month or so. And there's ample evidence in this record to demonstrate that the city had a legitimate nondiscriminatory reason for bringing about these disciplinary actions. And in fact, Ms. Abram had ample opportunity through the grievance arbitration process in her MOU to challenge those. And before she had a chance to do so, she went on an extended leave of absence. And when she returned, Mr. Fraser, who supervised overall her work unit, tried to get those grievance processes back on track. And Ms. Abram would have certainly had a full and fair opportunity under that process ultimately to go to an arbitration with a third-party neutral to get at those issues. So I think whether she was subjected ultimately to discrimination or not, I think one can still have a retaliation claim. But one still needs to overcome those hurdles of showing that the adverse action is somehow related to that protected activity. And I think here the record is replete with evidence that what was motivating those adverse actions at issue was her job performance. And she was certainly free to challenge that and to say even that it was unfair. But what she needs to prove here to prove her case is that they were in fact pretext because of her complaint, not that they were associated with the quality of her job performance. The only other thing I would add here, and something that wasn't addressed during the argument, is that the plaintiff also utterly failed to meet her burden of proof on the Monell liability issue here as it relates to liability against the city. Monell is not an affirmative defense. It's a part of a plaintiff's case-in-chief with respect to liability. And I think the city fully presented to the district court, and the district court agreed that there were no tribal issues of fact, that there was Monell liability here. And on that basis alone, whether the court finds that there was some basis for discrimination, certainly there's no liability against the city for that, unless the court has any further questions. All right. Thank you very much. Thank you. We'll hear rebuttal. I have nothing further to add. All right. Thank you. Thank you very much for your arguments. The case just heard will be submitted.
judges: Fletcher B. , Thomas, Smith M.